JESÚS GARCÍA RIVERA, Petitioner, *v.* SUPERIOR COURT, ARE-
CIBO PART, WILLIS RAMOS VÁZQUEZ, JUDGE, Respondent;
JUAN DELGADO PERAZA, Intervener.

No. 69. Decided December 19, 1962.

*V. Polanco de Jesús* for petitioner. *Eduardo M. Díaz Porto* for
intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

Jesús García Rivera, a farmer engaged in the growing of sweet sugar canes, owner of a farm in the municipality of Vega Baja, filed an action in the District Court, Ciales Part, against his bordering neighbor Juan Delgado Peraza, to recover from the latter the sum of $2,500, by way of damages to his cane plantation and fruit trees caused by a fire that took place on March 26, 1955, which started in Delgado Peraza's farm and which was allowed to extend over complainant's farm. Defendant answered the complaint denying all the allegations.

After numerous incidents, including the notification and answer to the interrogatories and the holding of a pretrial conference, the trial was held which lasted several days. From the original lengthy record which was introduced it appears that it began on November 14, 1956 and ended on March 20, 1958. The abundant variety of briefs, writs and motions introduced by both parties' attorneys are indisputable signs of the great interest displayed by them and of the substantial and careful presentation and defense of their respective theses before the District Judge, Ciales Part, who decided the suit in favor of plaintiff by judgment of July 18, 1958, imposing on defendant the payment of $2,272.86, costs and $200 for attorney's fees.

The District Court made the following findings of fact:

"FINDINGS OF FACT:

"1. Plaintiff and defendant own adjoining farms and at the time of the occurrences these farms had sugar cane plantations, which also adjoined;

"2. In the morning of March 26, 1955, plaintiff had, next to defendant's cane farm, a plantation of nine cuerdas of uncut

cane and, also, 31 cuerdas which had been cut in the previous month of February. He also had fruit trees, coconut palms, a wire fence, and a plot planted with coffee.

"3. That morning, defendant, with several laborers at his command, was giving orders in his farm adjoining plaintiff's, and allowed his employee Virgilio Vélez, who had a lighted torch in his hands, to set fire to defendant's own cane; this fire lasted until 10:00 or 11:00 in the morning when it reached plaintiff's cane plantation; it spread over the 9 cuerdas of standing cane and over 31 cuerdas which had already been cut; it swept over plaintiff's farm, burning 40 orange trees, 15 avocado trees, 15 grapefruit trees, 12 coconut palms, ¼ cuerda of coffee and the wire along 6 cuerdas of fence.

"According to the evidence we estimated the value of the damaged property as follows:

| | |
|---|---|
| "The 40 orange trees | $200.00 |
| "The 15 avocado trees | 15.00 |
| "The 15 grapefruit trees | 75.00 |
| "The 12 coconut palms | 96.00 |
| "The coffee plot | 50.00 |
| "The 6 cuerdas of wire | 60.00 |
| A total of | $496.00 |

"4. Plaintiff's nine cuerdas of cane should have produced him 35 tons of cane per cuerda, that is 315 tons; from that tonnage he could only salvage 164 tons which produced him $10.29 per ton of cane. Therefore he could not receive 151 tons which at the rate of $10.29 per ton make a total of $1,553.73; however, since this cane could not be taken to the Central we think it is just and fair to grant him 50 per cent of that sum as compensation, that is $776.86.

"An extra crop in addition to the regular one for the forty cuerdas of cane was made necessary by the fire, which extra crop we estimate at $25 per cuerda, that is $1,000 as losses."

From the judgment defendant appealed to the Superior Court, Arecibo Part, assigning as errors: (1, 2) admitting the statements of Francisco Méndez and Bienvenido Agosto; (3) failing to consider evidence offered by defendant; (4)

giving credit to plaintiff's evidence and (5) rendering judgment unsupported by the evidence.

After the case was submitted to the Superior Court on the extensive Statement of the Case prepared by the District Judge—consisting of 25 pages—and the numerous amendments to same proposed by defendant and which were partly accepted by the former, and on the elaborate briefs of both parties, the Superior Court, Arecibo Part, on December 23, 1959 affirmed the judgment appealed from, considering that no error whatsoever had been committed, separately setting forth the grounds of fact and of law, which led him to "dismiss the appeal, remaining in force and effect the judgment appealed from."

Defendant moved for reconsideration, insisting in the commission of the errors previously assigned in his brief and substantially repeating his previous argument. Plaintiff opposed the reconsideration of the judgment.

On November 11, 1960, considering that errors Nos. 1, 3, 4 and 5, had been committed—contrary to the decisions in its judgment of December 23, 1959—the Superior Court rendered a new judgment; "reversing itself and reversing the judgment rendered by the Ciales Part of the District Court," dismissing the complaint and imposing on plaintiff, besides costs, the payment of $300 for attorney's fees.

To review this second judgment we issued, at plaintiff's request, the corresponding writ of certiorari. The interested parties submitted the case on their briefs, respectively.

Petitioner contends that the Superior Court, Arecibo Part, a) erred in declaring the testimony of witness Francisco Méndez inadmissible, and b) in wholly dismissing the complaint respecting all the losses suffered by plaintiff.

The Superior Court, decided in its second judgment that the District Court had committed grave error in considering Francisco Méndez's testimony as evidence of the damages, because it was inadmissible due to the fact that he testified

"on the basis of information taken from several records of the Central Plazuela respecting tonnage and yield," which were not brought to trial, thereby violating § 24 of the Law of Evidence on the evidence of the content of a writing and the right to cross-question the other party.

We have read the detailed recital of the testimony of the witness made by the District Court, Ciales Part, in its Statement of the Case. The same constitutes material and pertinent evidence to prove the existence of the damages really suffered by plaintiff due to the fire which defendant himself, for his own benefit, ordered to be set in his farm in order to cut the cane, and which was later permitted to extend to the plantations of cane and fruit trees of the adjacent rural property of plaintiff.

At the time that he testified, Francisco Méndez was an agricultural engineer, with an experience of more than twenty years; his capacity as such was accepted by defendant's lawyer—see the original record, p. 48—since from 1926, that is, during 30 years he had been field superintendent, administrator, and superintendent of colonos of the Cambalache and Plazuela sugar mills.

He testified, among other things, that he visited plaintiff's farm on April 2, 1955, seven days after the fire occurred; he described the state and conditions of the property on that day, he estimated, as agricultural expert, on the basis of his experience, the probable production of tons of cane of that farm, the burnt cuerdas of standing cane, the damage caused to 31 cuerdas of growing sprouts; he testified on the difference in costs of crops of burnt cane and unburnt sprouts which are protected by cane trash; what is spent on weedings and the necessary weedings in each type of crop. As Head of the Central's Department of Colonos he knows "the system of computing cane for colonos." He had in his possession a note with averages of burnt cane belonging to plaintiff and gave the details on its hundredweights of sugar,

yield, average price, bonus, retention per cent, bonuses for molasses, hauling, compensation, and calculated the probable produce of the cane and the probable losses. He ended by saying:

"I limited myself to calculating the difference in harvesting expenses for any other thing which I might estimate, that would be a bit speculative, given the fact that those sprouts produce less next year, and the fact that they were burnt means an extra cutting, as if an extra cutting had been given, because the cane that is constantly cut produces less and yields less; when it reaches a limit the cane is replaced. He estimates the 31 cuerdas of the burnt cane at $1,914.01 plus $50 for the coffee plot. He says he saw the grapefruit trees, coconut palms and oranges when they were burning. He estimated a coffee plot was worth $50; 10 linear cuerdas of fence $60; he estimates the burnt cane at $1,914.01, the fences at $60."

On cross-examination he gave more details on the damages; he spoke of the cane yield and of the different factors which intervene in same, and of the difficulties in the cultivation, cutting, and hauling of the cane.

In the course of his testimony, he made reference to the appraisals made by "the assessment inspectors in the month of December," of the colonos' cane, and of the Central's records on the sprouts. But these references which he made in the course of his testimony were rather mentioned as a source of knowledge on production data, and which were known to him in his capacity as Head of the Department of Colonos. His testimony did not consist in reproducing the contents of records; it was a statement of his personal experiences, of his opinion as expert, and of the direct knowledge acquired when he personally inspected plaintiff's farm.

The Superior Court, Arecibo Part, in its first opinion and judgment, dated December 23, 1959, in deciding that the testimony of this witness was admissible and that no error had thereby been committed by the District Court, very properly set forth:

· ·"Error·is assigned in admitting the testimony of Francisco ·Méndez alleging that since he had no records at hand he testified on facts that were not known to him personally, plaintiff forgetting that this witness appeared as agricultural expert, that he worked in the Central which partly financed plaintiff; that as such expert, he came to the farm 8 days after the fire, and testified on the conditions of the property, its type of soil, and its capacity to produce cane in different stages of growth and the different types of soil and that since plaintiff is a colono of that Central and the witness is the Head of the Department of Colonos thereof and acquainted with the yield of plaintiff's property, of the crops planted that year, he then testified on all those points and on what it could produce according to the different circumstances which he explained. He was not an ordinary witness unacquainted with those facts, since besides being an expert, he visited the farm where the fire occurred, saw what was burnt, estimated the probable produce, the burnt trees, the cuerdas of fence which had been· burnt and the cost of refencing and the additional expenses which arise in producing new cane on land which has been subject to fire.

"We do not consider that this error has been committed."

In *Costas* v. *G. Llinás & Co.*, 66 P.R.R. 688, 699 (1946), the sufficiency of an expert testimony was challenged because it "was not based on precise records," that is, because the expert had not made reference to records. Respecting that contention it was stated· in part:

■ "... Defendants challenged the court's finding on the ground that it should have given no credence to this testimony because it was based on the opinion of the expert as to what the production of the cane in question should have cost considering the land, the amount of cane cultivated each year, wages, fertilizers, etc. and not on precise records of what was actually spent. The mere fact that the expert could not base his testimony on precise records does not make the evidence inadmissible. The weight of this testimony shall depend particularly upon the credit which the court gives to the expert, considering his experience in the matter,[12] or his opportunity ·to render. an opinion with knowledge of the facts, and his demeanor while testifying. 2 Wigmore, Evidence (3rd. ed. 1940), § 677.

"Footnote 12.—It appears from the evidence that Francisco Colón Moret has been engaged in the cultivation of cane since 1924; that he has owned farms and has cultivated them; that he has been Chief of Cultivation and Agricultural Consulting Agent in several sugar mills among them, Mercedita, Yabucoa, Pasto Viejo, Coloso and Lafayette; that he has been engaged in those activities for 24 years and is familiar with the cost and production of sugar cane, especially in areas similar to that where the farm which has given rise to this action is situated."

If defendant would have been interested in hearing those records, or if he would have doubted the accuracy of the references made by the expert on November 14, 1956, when he testified, he had ample time and opportunity to inspect, make copies, and introduce them as evidence, since the trial came to an end on March 20, 1958. He could have brought them in the same way he brought the certified copies of plaintiff's income tax returns for the years 1955 and 1956, and which he submitted to the District Court with his motion of May 21, 1958, entitled "Offer of Documentary Evidence."

We consider the evidence introduced by plaintiff in the District Court sufficient to support the judgment it rendered. Defendant's evidence could not keep the complaint from prospering.

Errors Nos. 3, 4 and 5 assigned by defendant in the Superior Court, Arecibo Part, which in its first judgment it considered they had not been committed, but which in its second judgment it held that they had been committed, refer to alleged contradictions incurred by plaintiff's witnesses. The best proof that such alleged errors were harmless or not committed, is found in the paragraphs of the first judgment of the Superior Court, referring to the same errors and which state the following:

"According to the case of People v. Flores a mistake by a witness is a matter affecting his credibility before the court but can not be ground for reversal if no bias, prejudice or manifest error in weighing the evidence is shown, and none of this has been proved.

■ *"People* v. *Flores,* 47 P.R.R. 788, 789.

"A case is not determined on a single aspect of the proof, but on *the evidence as a whole;* nor can it be concluded lightly, but only after serious consideration, that a witness who contradicts himself is wilfully falsifying the truth. (Emphasis added.)

■ *"Villanueva* v. *Suárez,* 41 P.R.R. 39, 50.

"Wide latitude should be given the courts in considering and weighing such contradictions and in identifying them as either apparent or real, circumstantial or essential.

*"Villanueva* v. *Suárez,* 41 P.R.R. 39, 50.

"In the fourth error appellant complains that the lower court erred in giving credit to plaintiff's evidence and it does so because it considers that that evidence is full of contradictions and in support thereof he cites contradictions in the testimonies of Julio Bithorn, Francisco Méndez, Benito Maldonado, Bienvenido Agosto, Daniel Agosto and Jesús García himself.

"We shall begin by citing some of these alleged contradictions. Plaintiff testified that his loss amounted to $3,496 and defendant alleges contradiction because he only claimed $2,500. The complaint originated in the District Court with jurisdiction limited to $2,500 and plaintiff limited himself to that amount. Formerly the Municipal Court, now District Court, had jurisdiction up to $500 and it has been decided that if a party suffering a greater loss appears before the Municipal Court claiming only $500, it does not lose the right to that claim of $500, because it could have very well waived the rest.

■ "With respect to calling defendant Juan Delgado Peraza to testify as plaintiff's own witness, it was properly done that way pursuant to Rule 43 of the Rules of Civil Procedure effective at that time.

"And. if. we were to continue examining the other points raised by appellant we would reach the same conclusion that it was the judge who was called upon to weigh the evidence and that the error does not charge grave and manifest error of law, nor passion, prejudice or partiality. We have read the statement of the case, the allegations of both parties, and the legal provisions which may be applied thereto and we are convinced that no such error exists.

"The fifth error is to the effect that judgment was rendered against defendant without being supported by the evidence.

"Plaintiff alleges that a fire has been proved, and that plaintiff merely offered evidence to the effect that it was defendant's workers who started the fire and not defendant himself. The witness Benito Maldonado testified that on the day of the fire he was working with Juan Delgado Peraza; that he came to work at 7:00 a.m.; that Mr. Juan Delgado arrived before him and the others to dispose of the work; that he left Virgilio Vélez, the foreman, with a gas torch starting the fire at 6:00 in the morning and that he told him 'you stay here setting fire, for I am leaving' and that the fire started little by little; Daniel Agosto expresses himself in these same or similar words; that when Virgilio Vélez was starting the fire Juan Delgado Peraza was there on horseback.

"Since the judge is the one who must give credit to the statements of the witnesses, it is his duty to observe their motions, their gestures, etc. Reading the statement of the case we find the following passage:

"Plaintiff's witness, Daniel Agosto, on cross-examination addressed defendant's attorney and told him 'I have something else to explain. Mr. Juan Delgado sent for me on Monday of this week, there at my work; I went and he wanted to bribe me for $150' . . . and that defendant told him 'well, this is the statement that I am going to give you, you did not see me there setting fire; I am going to give you $150, etc. etc.'

"Since defendant obtained this statement outside of the direct interrogatory, it was sufficient proof for the trier to reach the correct conclusion respecting the whole evidence and particularly respecting defendant's participation in starting the fire.

"As to the amount of the damages the court had under consideration the statements of Francisco Méndez, plaintiff himself, and of Darling Ruiz, the latter, a witness who worked in Central Plazuela and who was in charge of accounts and liquidations and as such witness he testified on the cane delivered by plaintiff, the average price of sugar, the value of the crop, provisional liquidations, reliquidations, compensations, etc. We consider this evidence to be sufficient to decide the case in the way in which the trier did.

"The appeal is dismissed."

In view of the foregoing, the second and last judgment rendered by the Superior Court, Arecibo Part, on November

11, 1960, will be reversed and leaving in full force and effect the first one it rendered on December 23, 1959, affirming in all its parts the original judgment of the District Court, Ciales Part, on July 18, 1958.